**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALONZO LUGO, | |
| Plaintiff, | Civil Action 06-2848 (FLW) |
| v. | **O P I N I O N** |
| CAMDEN COUNTY CORRECTIONAL FACILITY, | |
| Defendant. | |

**APPEARANCES:**

    ALONZO LUGO, pro se
    #169602
    Camden County Correctional Facility
    Camden, New Jersey 08103

**FREDA L. WOLFSON, District Judge**

    Plaintiff ALONZO LUGO (hereinafter "Plaintiff") currently confined at the Camden County Correctional Facility, Camden, New Jersey, submitted for filing his complaint (hereinafter "Complaint") seeking to bring this action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on Plaintiff's in forma pauperis application and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to

Page -1-

file the Complaint.

## BACKGROUND

Plaintiff's Complaint, in its entirety, alleges as follows:

> One day around 5-28-06[, Plaintiff] took a look on [his] penis and s[aw] a couple of sores on [it] (4 spots on the right side of [his] penis[); Plaintiff then] ask[ed] to speak to a nurse [conveying his request] through Officer Dolson. [Plaintiff] explained [his] situation [to the nurse] and received treatment [on] the next day. [The nurse] gave [Plaintiff] some ([antibiotic] ointment).

See Compl. at 6.

Setting forth these allegations, Plaintiff asks for relief in the form of

> find[ing] out [about and] understanding [his] infection. [Specifically,] how is it that it came without having sexual intercourse. [Plaintiff also asks for the] ways to prevent this [ailment] from happening to another person.

Id. at 7.

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the

requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

### DISCUSSION

**A.   Eighth Amendment Claim**

Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable

prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that ""he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Thus, to prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Persistent severe pain qualifies as a serious medical

need.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates.  See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the

inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures can amount to cruel and unusual punishment. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment or treatment do not state Eighth Amendment claims).

Construing Plaintiff's claim as an Eighth Amendment one, this Court finds that Plaintiff's constitutional rights were not violated.

Neither Plaintiff's lack of understanding of the pathogen causing the rash at issue nor Plaintiff's suspicions that he might develop a medical problem in the future constitute a cognizable Eighth Amendment claim. See Keith v. Hines, 2006 U.S. Dist. LEXIS 25991 (W.D. Okla. Mar. 13, 2006) (the inmate failed to state a § 1983 claim where the inmate alleged inadequate medical care based on the medical staff's refusal to entertain the inmate's continued need to complain about the condition of his penis); Watson v. Schilling, 2005 U.S. Dist. LEXIS 3526 (W.D. Va. Mar. 9, 2005) (an inmate's § 1983 complaint failed to allege any facts to support a claimed violation of his Eighth Amendment rights because the medical evidence established that the inmate had been seen and treated on a monthly and daily basis for each and every medical condition that he had alleged, including a rash on his penis that he believed to be herpes).

The Complaint unambiguously states that Plaintiff was given a

treatment; and it appears that the treatment involved an effective medication. These actions by the medical staff of the Defendant clearly indicate that the staff was not "deliberately indifferent" to Plaintiff's medical need, even if Plaintiff believed that he was entitled to an education about--or further study or further/different treatment of--his condition. See <u>Alsina-Ortiz v. Laboy</u>, 400 F.3d 77 (1st Cir. 2005)(a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); <u>Smith v. Sator</u>, 102 Fed. Appx. 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that the prisoner found to be necessary based on his reading of medical literature, the court held that the complaint was frivolous because refusal to provide specialized tests amounted to nothing more than a difference of opinion regarding the medical diagnosis and treatment and did not rise to the level of an Eighth Amendment violation); <u>Lopez v. Kruegar</u>, 1990 U.S. Dist. LEXIS 6808 (E.D. Pa. June 4, 1990) (where plaintiff stated that he was receiving medication but felt that additional medical tests should be taken, his allegations were directed at the wisdom or quality of treatment and did not state a claim); <u>Coleman v. Crisp</u>, 444 F. Supp. 31 (W.D. Okla. 1977) (difference of opinion between plaintiff and doctors concerning availability of treatment and medication did not establish

violation of constitutional right or sustain claim). Similarly, Plaintiff's interest in preventive measures does not state a constitutional claim. See Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury).

Since Plaintiff concedes that Plaintiff's condition was treated promptly and effectively, Plaintiff's allegations with respect to his genital ailments fail to state a claim upon which relief may be granted.

**B.    Jus Tertii Claim**

The Court lacks jurisdiction to entertain Plaintiff's claim with respect to protecting the rights of unspecified "another person."

Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own. The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).

The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the

'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64.  The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts. See id. at 164.

In view of these requirements, as well as in view of Plaintiff's failure to clarify the disability--or even the very identity of that "another person," this Court cannot currently recognize Plaintiff as "next friend" to the unspecified person: Plaintiff's Complaint neither shows that Plaintiff is in a requisite relationship to such "another person" nor asserts that this person is unable to bright a suit in his/her own right. Accord Coalition of Clergy v. Bush, 310 F.3d 1153, 157-59 (9th Cir. 2002) (providing a thorough discussion of the "next fiend" caselaw and noting that there should be "a significant pre-existing relationship between the prisoner and the putative next friend"); DeVetsco v. Horn, 53 F.3d 24, 27 (3d Cir. 1995) (following Whitmore, 495 U.S. 149, and denying "next friend" standing to the third persons for "fail[ure] to sustain their burden of

establishing . . . mental incompetence [or] other disability on the part of [prisoner]").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint is DISMISSED WITH PREJUDICE for failure to state a claim and lack of jurisdiction.

An appropriate Order accompanies this Opinion.


                                       **S/Freda L. Wolfson**
                                       **FREDA L. WOLFSON**
                                       **UNITED STATES DISTRICT JUDGE**

Date: June 28, 2006